## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|  |  |
|---|---|
| AARON CHRISTOPHER SEARCY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No.: 2:15-cv-80 |
| ) | |
| HAROLD W. CLARKE, Director, ) | |
| Virginia Department of Correction ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* litigant Aaron Christopher Searcy's ("Searcy") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, and Respondent's Motion to Dismiss, ECF No. 12. The Petition was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Eastern District of Virginia Local Civil Rule 72. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the reasons stated below, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** and that the Petition for Writ of Habeas Corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 23, 2011, the Circuit Court in the City of Norfolk found Searcy guilty of robbery and conspiracy, in violation of Virginia Code Sections 18.2-58 and 18.2-22,

respectively. *See* ECF No. 14 attach. 2. The court subsequently sentenced Searcy to thirty (30) years for robbery, with twenty (20) years suspended, and twelve (12) months for conspiracy on September 16, 2011. *Id.* Searcy filed a direct appeal to the Court of Appeals of Virginia, challenging the sufficiency of the victim's identification of Searcy as the robber as well as the lack of evidence to establish the existence of an agreement by Searcy and his co-defendant to commit robbery ("the conspiracy issue"). *Searcy v. Commonwealth*, No. 1937-11-1, 2012 WL 5906893 (Va. App. Ct. Nov. 27, 2012). The Court of Appeals of Virginia granted the appeal in part on May 21, 2012, on the conspiracy issue, and on November 27, 2012, the Court of Appeals of Virginia affirmed Searcy's conviction denying his assertion that the evidence was insufficient to prove an agreement to commit robbery. *Id.* at 3. The Court found that the evidence "permit[ted] the fact finder to reason that the robbery was not a spontaneous crime committed only by [Searcy] . . . [and] [t]he actions of [Searcy] and [the co-defendant] . . . supported the reasonable inference that [Searcy] and [the co-defendant] had a prearranged plan to take the item from the victim." *Id.*

Searcy then filed an appeal to the Supreme Court of Virginia, which denied the appeal on May 23, 2013. ECF No. 14 attach. 5. On May 23, 2014, Searcy filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. *Id.* attach. 9. He raised the following claims:

A. Petitioner's rights under the Due Process Clause to the United States Constitutions [sic] had been violated by an unduly suggestive and unnecessary impromptu pre-trial identification which deprived him of his right to counsel and compulsory process.

B. Petitioner was denied of the right to have the effective assistance of counsel for his defense under the Sixth Amendment to the United States Constitution prior and during his trial, and on direct appeal:

1. Defense counsel elicited prejudicial testimony from a common-wealth's [sic] witness whose testimony was inherently prejudicial, violated the Petitioner's Due Process rights.

2. Appellant counsel failed to pursue his claim that the trial court erred in admitting into evidence Petitioner's pre-court identification which was impermissibly suggestive.

*Id.* (capitalization, quotations, and internal brackets omitted).

The Supreme Court of Virginia dismissed his state habeas petition on November 19, 2014, as untimely because Searcy "failed to establish that the petition was 'deposited in the institution's internal mail system . . . on or before the last day for filing,' as provided in Rule 5:5 (d)." *Id.* attach. 10.

On or about February 12, 2015, Searcy filed the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. In his Petition, Searcy raises the same grounds alleged in his Supreme Court of Virginia petition. *Id.* As relief, Searcy asks the Court to "enter an Order granting him a writ of habeas corpus *ad subjiciendum*, thus granting him a new trial, or in the alternative, vacate and dismiss his convictions." *Id.* at 27. The Virginia Attorney General, on behalf of the Respondent, filed a Rule 5 answer, a Motion to Dismiss, a brief in support of the motion to dismiss, and a *Roseboro* notice. ECF Nos. 12-14. The Petitioner filed a motion for evidentiary hearing and a brief in opposition to the Respondent's Motion to Dismiss, ECF No. 17. The Respondent did not reply, and the time to do so expired. Therefore, the Motion to Dismiss is ripe for recommended disposition.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Timeliness

Section 2254 petitions are subject to a one-year statute of limitations and must be dismissed if they are filed later than one year after the conclusion of direct review of the conviction or the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A). Generally, the limitation period for filing a § 2254 petition is statutorily tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. 28 U.S.C. § 2244(d)(2). To be properly filed, the petition must comply with the state's procedural rules imposed on post-conviction petitions, *Pace v. DiGuglielmo*, 544 U.S. 408, 413-17 (2005) (denying statutory tolling to an improperly filed petition when the state court rejected the petition as untimely), and violation of those rules, including "time limits, place for filing and filing second or successive petitions," will render that petition improperly filed and ineligible for statutory tolling, *Rodgers v. Angelone*, 113 F. Supp. 2d 922, 929 (E.D. Va. 2000). Moreover, the time in which a habeas petition is pending in federal court does not toll the one-year statute of limitations. *Duncan v. Walker*, 533 U.S. 167, 172 (2001).

The Supreme Court of Virginia denied Searcy's petition for a writ of certiorari on May 23, 2013. Therefore Searcy's time for filing a writ of habeas corpus began on August 21, 2013, or ninety days after the Supreme Court of Virginia refused his direct appeal and the time to appeal that order to the United States Supreme Court expired. *See* Sup. Ct. R. 13.1; *Harris v. Hutchinson*, 209 F.3d 325, 328 & n.1 (4th Cir. 2000) ("[T]he time for seeking direct review of [the] state-court conviction was concluded . . . when the period for filing a petition for a writ of certiorari in the United States Supreme Court expired."). Under § 2244(d)(1), Searcy had until

4

August 21, 2014, to file the instant Petition in this Court. As noted by the postage date, Searcy delivered his Petition to prison officials by February 13, 2015, ECF No. 1 attach 2 (showing a scanned copy of the mailing envelope), which would be outside of the August 21, 2014 deadline. However, Searcy may reap the benefit of statutory tolling.

1. Statutory Tolling

Generally, the limitation period for filing a § 2254 petition is tolled during the time in "which a *properly* filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. 28 U.S.C. § 2244(d)(2) (emphasis added). To be properly filed, the petition must comply with the state's procedural rules imposed on post-conviction petitions, *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) (denying statutory tolling to an improperly filed petition because the state court rejected the petition as untimely), and violation of those rules, including "time limits, place for filing and filing second or successive petitions," will render that petition improperly filed and ineligible for statutory tolling, *Rodgers v. Angelone*, 113 F. Supp. 2d 922, 929 (E.D. Va. 2000). Subsequently filed habeas petitions do not reset the date on which the one-year period begins to run. *See, e.g.*, *Engle v. Clark*, No. 3:12CV586, 2014 WL 2157616, at *3 (E.D. Va. May 23, 2014) (refusing to toll the time in which a state habeas petition was pending when it was filed after the one-year statute of limitations period expired).

Virginia Code § 8.01-654(A)(2) sets forth a procedural rule whereby a state prisoner must file his state habeas petition within one year from the date of the final disposition of a direct appeal or from the date in which the time for filing a direct appeal would have expired. Va. Code 8.01-654(A)(2); *see also Haas v. Lee*, 263 Va. 273, 276, 560 S.E.2d 256, 257 (2002) (explaining Virginia Code § 8.01-654(A)(2) as requiring a state prisoner to "file his petition

within two years from the date of final judgment in the circuit court or one year from either final disposition of the direct appeal in the state court or the time for filing such appeal has expired, whichever is later"). The Supreme Court of Virginia denied Searcy's petition for appeal on May 23, 2013. ECF No. 14 attach. 4. Thus, to properly file a state habeas petition (and ultimately benefit from statutory tolling), Searcy would have had to file his state habeas petition within one year from this date, or by May 23, 2014.

The Supreme Court of Virginia dismissed Searcy's state petition on November 19, 2014, on the basis that it was untimely because it was not filed by May 23, 2014. ECF No. 14 attach. 10. Respondent argued that because Searcy's state petition was not properly filed, he was unable to reap the benefit of statutory tolling. ECF No. 14 at 8. Respondent cited to *Artuz v. Bennett*, which states:

> [A]n application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

531 U.S. 4, 8 (2000); ECF No. 14 at 7. Respondent then concluded that because the Supreme Court of Virginia dismissed Searcy's petition as untimely, it was not a properly filed petition. ECF No. 14 at 7-8 (citing *Pace*, 544 U.S. at 417). Searcy argued his state petition was properly filed and that the Supreme Court of Virginia improperly concluded that it was untimely. ECF No. 1 at 27. Searcy stated he placed his state habeas petition "in the institution's internal mailbox located in front of the prison's dining hall on the 23rd day of May, 2014, after having his petition notarized by an official of the prison." ECF No. 17 at 6. Additionally, his state habeas petition is dated May 23, 2014. ECF No. 14 attach. 9 at 27. The certificate of service reflects it was deposited in the prison mailing system that same date. *Id.* at 7. Due to an internal prison mailing system policy and a one-day extension for the Memorial Day holiday, the

Supreme Court of Virginia did not receive Searcy's state petition until May 28, 2014. *Id.* at 7. In support of his argument, Searcy attached a sworn and notarized affidavit from Breanna V. Matthews ("Ms. Matthews"), a Senior Counselor at the St. Brides Correctional Center ("St. Brides"). ECF No. 1 at 41. Ms. Matthews stated that "on the [sic] May 23rd, 2014, between 2:30 p.m. and 3:00 p.m., [she] notarized [sic] a habeas petition and an affidavit in forma pauperis for Aaron C. Searcy." *Id.*

In the dismissal, the Supreme Court of Virginia stated that Searcy had "failed to establish that the petition was 'deposited in the institution's internal mail system . . . on or before the last day for filing,' as provided by Rule 5:5(d)." *Id.* attach 10. Supreme Court of Virginia Rule 5:5(d) specifically states:

> A paper filed by an individual confined in an institution, including a prison, jail, or Virginia Center for Behavioral Rehabilitation, is timely filed if deposited in the internal mail system with first-class postage prepaid on or before the last day for filing. Timely filing of a paper by an individual confined in such an institution may be established by (1) an official stamp of the institution showing that the paper was deposited in the internal mail system on or before the last day for filing, (2) an official postmark dated on or before the last day for filing, or (3) *a notarized statement signed by an official of the institution showing that the paper was deposited in the internal mail system on or before the last day for filing.*

Sup. Ct. Va. r. 5:5(d). Since Rule 5:5(d) clearly states that a notarized statement signed by an official of the institution showing that the paper was deposited in the internal mail system on or before the last day for filing establishes that the petition was timely filed, the question for the Court, then, is whether Ms. Matthews' affidavit constitutes such a statement. Given the unique circumstances in this case, the undersigned finds that it does.

In *Houston v. Lack*, the Supreme Court discussed the basis for the prison mailbox rule—a rule defining a *pro se* prisoner's date of filing to be the date he delivers it to prison officials:

> [T]he *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access-the prison authorities-and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

487 U.S. 266, 271-72 (1988). It is evident that Searcy deposited his petition through the only means he had available—the mailbox by the dining hall. Once deposited, he relinquished all personal control over the timing of the petition, knowing only that he mailed it on the date he put it in the mailbox. The petition is dated May 23, 2014, the certificate of service is dated May 23, 2014, and further, Ms. Matthews, a prison official, notarized it the same date. Consequently, the available evidence establishes that Searcy deposited his petition with prison authorities on May 23, 2014.

In effect, Respondent's position is that the prison's policy of requiring prison mail to be deposited by the designated early morning pick-up time means that, even though Searcy deposited the habeas petition in the institution's internal mail system on the day the filing was due, he is not credited with timely filing because the deposit was not made early enough on the day it was due. Respondent has cited no authority for the proposition that it can circumscribe the prison mailbox rule's deadline of "on the last day for filing," to mean "no later than 7:30 a.m. on the last day of filing." Such an interpretation clashes with the purpose of the mailbox rule articulated by the Supreme Court in *Houston*. Indeed, Searcy had "no choice but to entrust the forwarding of his [habeas petition] to prison authorities, whom he cannot control or supervise

and who may have every incentive to delay." *Houston*, 487 U.S. at 271. The uncontradicted evidence establishes that Searcy deposited his habeas petition in the institution's internal mail system on or before the last day for filing, and regardless of the date the institution date-stamped the petition, it was timely filed.

This conclusion is buttressed by the wholly inconsistent evidence before the Court as to St. Bride's policy for when prisoner mail must be delivered to them by means of the prisoner mailbox. Ms. Matthews averred in her affidavit that "all outgoing inmate mail is collected by 9:00 a.m. by mailroom staff." ECF No. 1 at 41. In contrast, Gloria Sivels, Institutional Operations Manager at St. Brides, averred in her affidavit that "Offenders may place outgoing mail in a mailbox located outside the offender dining hall. The mail is collected Monday through Friday between 7:30 a.m. and 8:00 a.m. and processed that same day, with the exception of holidays." *Id.* at 52. Apart from these conflicting representations, St. Brides' apparently had no written internal mail policy in May 2014 as to the deadline when mail must be deposited. According to the Offender Orientation Manual in effect on December 12, 2012, the only direction regarding the deposit of prisoner mail is the provision: "All outgoing mail must be placed in the mailbox located in front of the Dining Halls." *Id.* at 45. No statement is made regarding what time mail must be placed in the mailbox for pick-up. *Id.* This policy subsequently was revised on October 24, 2014, to add the following information: "All outgoing mail must be placed in the mailbox located in front of the dining halls. Outgoing mail is scheduled for pick-up by staff at approximately 7:30 a.m." *Id.* at 48. Notably, this revision to the Offender Orientation Manual occurred *after* the Petitioner's mailing of his state habeas petition at issue here.

In addition, the prison's Operating Procedure: 803.1, in effect as of November 1, 2011, provides:

> a. All outgoing legal mail shall be date-stamped and logged with the date the mail was received from the offender.
> b. The Facility Unit Head shall ensure that notice is posted in the area where offender mail is deposited for later pick-up, informing the offender population that deposits after a given time will be stamped and logged as being deposited on the next day.

*Id.* at 43. Searcy contended, and Respondent did not dispute, that no notice informing offenders when mail would be picked up was posted near the area where mail is deposited. Respondent's conflicting representations as to the deadline for when prisoner mail must be deposited, along with the absence of any written policy at St. Bride's notifying prisoners of the institution's practice in handling prisoner mail, defeat its attempt to argue that Searcy's habeas petition was not timely delivered to the institution.

Respondent argued that Searcy was not "diligent in ensuring his petition was timely placed in the institution's mail system pursuant to [St. Brides'] policies." ECF No. 14 at 9. Respondent further argued that Searcy does not demonstrate any lack of awareness of the pick-up time of the institutional mail, and that he should not be entitled to have it stamped the day he put it in the mailbox if the prison's internal policy regarding outgoing mail deposited after the pick-up time is to date-stamp outgoing mail for the following day. *Id.* Respondent's argument about diligence is unpersuasive. The Fourth Circuit, interpreting *Houston*, found that a court is not to inquire into a petitioner's diligence when making its factual determinations because the inquiry is strictly limited to what actually transpired in terms of timing. *See United States v. McNeill*, 523 F. App'x 979, 983 (4th Cir. 2013). Contrary to Respondent's assertion, the incompatibility or inconsistency between Rule 5:5(d) and St. Bride's internal prison policies is an irrelevant consideration because the internal prison policy does not supplant Rule 5:5(d). *See*

*McNeill*, 523 F. App'x at 982 (adopting the prison mailbox rule for habeas petitions); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) ("[T]he rule in *Houston* is a rule of equal treatment; it seeks to ensure that imprisoned litigants are not disadvantaged by delays which other litigants might readily overcome. It sets forth a bright line rule—that filing occurs when the petitioner delivers his pleading to prison authorities for forwarding to the court clerk."); *Com. v. Hartsgrove*, 407 Mass. 441, 442-43, 553 N.E.2d 1299, 1301 (1990) (finding that a defendant's appeal was deposited in the institutions internal mail system when defendant placed the envelope in the institutional mailbox outside the institutional dining hall).

The evidence presented is that Searcy delivered his petition to prison authorities on May 23, 2014. Consequently, based on the clear language of the statute, this Court **FINDS** that Searcy's state petition was properly filed and therefore he must be afforded the benefits of statutory tolling.

2. Application of Statutory Tolling

Because this Court finds that Searcy properly filed his state petition, he is afforded the "tolling benefit," whereby the time for filing his federal petition is tolled by the time his state habeas petition was pending. *See* 28 U.S.C. § 2244(d)(2), *Pace v. DiGuglielmo*, 544 U.S. at 413. As mentioned, *supra*, Searcy originally had until August 21, 2014 to file in this Court. His state petition remained pending for one hundred and eighty (180) days or five months and twenty-seven days, so his deadline for filing is extended by that amount of time. Therefore, Searcy had until Tuesday, February 17, 2015 to file the instant Petition. The instant Petition was postmarked on February 13, 2015,[1] four days before the time to file expired. Therefore, the undersigned **FINDS** that Searcy's petition is timely.

---

[1] Again, applying the prisoner mailbox rule, the undersigned uses the date Searcy placed his Petition in the prison mailing system. *See* ECF No. 1 at 27.

## B. Exhaustion

Before addressing the merits of a federal habeas petition, the preliminary inquiry must be whether the petitioner appropriately exhausted his claims and whether the petitioner's claims are barred by procedural default. Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). Respondent conceded that Searcy exhausted the habeas claims in the instant Petition by presenting them to the Supreme Court of Virginia, ECF No. 14 at 5, and the undersigned agrees that Searcy exhausted his state remedies as to the three claims he presented even though the Supreme Court of Virginia dismissed his habeas petition as untimely and did not address the merits of his claims. *See Ex parte Hawk*, 321 U.S. 114, 118 (1944) (finding exhaustion where state court denied petitioner's state habeas without opinion); *O'Sullivan*, 526 U.S. 838, 853

(1999) (holding that "the state court's refusal to hear the claim on procedural grounds did not mean that the claim had not been exhausted").

## C. Standard of Review

A claim that was denied by the state court solely on procedural grounds is not entitled to 28 U.S.C. § 2254(d) deferential review, because the claim was not adjudicated on the merits. *See, e.g., Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002); *Thomas v. Horn*, 570 F.3d 105 (3d Cir. 2009), *cert. denied*, 130 S. Ct. 1879 (2010) (finding that even where a lower state court decides the claim on the merits but a reviewing appellate state court decides the claim entirely on procedural grounds, that claim is reviewed *de novo* by a federal court). Such is the case here. The Supreme Court of Virginia dismissed Searcy's state habeas solely on procedural grounds. Because there has been no adjudication on the merits by the highest state court, this Court reviews Searcy's claims *de novo*. *Id.* at 114-16; *accord Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997).

## D. Merits of Searcy's Claims

1. Claim A: The Pre-trial Show-up

In Claim A, Searcy argued that he was subjected to an unduly suggestive and unnecessary impromptu pretrial show-up. ECF No. 1 at 17. The "show-up" Searcy refers to occurred late in the evening on July 15, 2010, the date of the robbery in which Search was convicted. Hr'g Tr., *Commonwealth v. Searcy*, CR10002711000,01, at 32 (Va. Cir. Ct. Feb. 3, 2011) [hereinafter "Hr'g Tr."]. Officer William Cogswell ("Officer Cogswell") of the Norfolk Police Department was dispatched at 9:13 p.m., responding to a call on West Government Avenue in the City of Norfolk, a location within his regular area of patrol. *Id.* at 14. When he arrived, he spoke with the victim who indicated that he was pushing a cart with a TV on it down the street to his mother's house when he was approached by a man and a woman. *Id.* at 16-17.

The man punched him and then proceeded to take his cart (with the TV still on it), pushing it down the street. *Id.* The victim described the two suspects, one being a black male with a dark tank top, grey pants, and long hair on his chin, and the other being a white female with a black eye. *Id.* at 16. Officer Cogswell indicated that he was familiar with the female, later identified as Heather Ballard ("Ms. Ballard"), since she had lived in the neighborhood. *Id.* at 27-28. Officer Cogswell provided information—including an address—about Ms. Ballard, as a potential suspect to the other detectives who arrived on scene. *Id.* at 28.

Detective Shauna Freeman ("Detective Freeman") was dispatched to the 200 block of West Government Avenue in the City of Norfolk to handle a robbery investigation that had occurred earlier that evening. *Id.* at 32-33. Detective Freeman arrived with her partner, Detective Arthur Randolph ("Detective Randolph"), and initially spoke with the victim. *Id.* at 33. Detectives Freeman and Randolph proceeded to Mason Creek Road to try and locate Ms. Ballard. *Id.* at 35. They arrived at Ms. Ballard's house and, after speaking with her, detained her as a suspect. *Id.* at 37. The detectives then had her stand in the middle of the street with police vehicle lights shining on her, and showed her to the victim, who was inside of a police vehicle. *Id.* at 39. The victim, without hesitation, indicated, "Yes, that's her." *Id.* Ms. Ballard also provided an identity of a co-defendant, "Dro," who she later stated was Aaron Searcy, the Petitioner. *Id.* at 38-39. The detectives then proceeded to conduct a show-up with seven people, five males and two females, all of whom had been inside of Ms. Ballard's house when the detectives arrived. *Id.* at 41, 65-66. The police brought the males out of the home and had them stand on the sidewalk so that Ms. Ballard could identify the co-defendant she was with. *Id.* at 41. After Ms. Ballard identified Searcy, the males were shown to the victim, who was up the street and did not see Ms. Ballard's identification but who also separately identified Searcy. *Id.* at 43,

68.  At the time of the show-up, Searcy was wearing a white tank top, and not a dark tank top as the victim originally described the suspect. *Id.* at 79.  The detectives, with permission from Ms. Ballard, then opened the shed behind Ms. Ballard's house, and found a large-screen TV and a Rubbermaid cart. *Id.* at 66, 87

Searcy argued that the show-up "was highly suggestive in that the alleged accomplice, Heather Ballard, testified at trial that the detectives told her the petitioner's name during the 'show-up.'" ECF No. 1 at 17.  Searcy contended that the show-up was in the investigatory rather than the accusatory stage, but that it still violated his due process rights. *Id.*  Both Searcy and the Respondent cite to *Niel v. Biggers*, 409 U.S. 188 (1972), a United States Supreme Court case that set the standard for determining the reliability of an out-of-court witness' identification.  ECF Nos. 1 at 18, 14 at 10.  In *Biggers*, the Court stated that "it is the likelihood of misidentification which violates a defendant's right to due process." 409 U.S. at 198.  The Court is to first determine whether an out-of-court identification was unnecessarily suggestive. *Id.* at 199.  An unnecessarily suggestive out-of-court identification is one that is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 409 U.S. at 197 (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)); *United States v. Mattox*, 166 F.3d 335 (4th Cir. 1998) ("An out-of-court show-up violates the Constitution only if the procedure is 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'").  Further, when a claim arises that the circumstances of an identification "was so unduly prejudicial as fatally to taint his conviction[, the claim] must be evaluated in light of the totality of surrounding circumstances." *Simmons*, 390 U.S. at 383.

Specifically in *Simmons*, the Court addressed whether a pre-trial photograph identification was unnecessarily suggestive that it led to misidentification of the defendant. *Id.* at 382. The day following a bank robbery, FBI agents obtained at least six snapshots of two suspects from one of the suspect's sisters. *Id.* The photos consisted mostly of group photos of the two suspects with other people. *Id.* Later that day, the agents showed these photos to five bank employees (separately) who had witnessed the robbery. *Id.* All five employees identified one of the suspects. *Id.* The Court found that it was not unnecessarily suggestive:

> [I]t is not suggested that it was unnecessary for the FBI to resort to photographic identification in this instance. A serious felony had been committed. The perpetrators were still at large. The inconclusive clues which law enforcement officials possessed led to [the defendants]. It was essential for the FBI agents swiftly to determine whether they were on the right track, so that they could properly deploy their forces in Chicago and, if necessary, alert officials in other cities.

*Id.* at 384-85. The detectives in Searcy's case were investigating a robbery that had happened that evening. Similar to the situation in *Simmons*, a felony had just been committed that included the beating of an innocent man, and the suspects were still at large. The victim provided a description of the two suspects just moments after the incident happened. Hr'g Tr. 14-16. The victim's description of the woman suspect gave the detectives enough information to start their investigation with Ms. Ballard, with whom Officer Cogswell and Detective Randolph were familiar and who had distinct features. *Id.* at 20, 39, 50. Ms. Ballard then identified Searcy, both visually and by his nickname, as her co-defendant. *Id.* at 41-43. The detectives individually showed at least five men to Ms. Ballard out on the sidewalk under a light. *Id.* at 43, 93-94. She identified Searcy. The same men were then shown, in similar circumstances but via the lighting of police headlights and in the street, to the victim, who also identified Searcy.[2] *Id.* Neither Ms.

---

[2] Of note is Searcy's argument that the victim's identification was unreliable because the duration of the time the victim observed the suspect was brief and that the victim did not provide a description as the suspect's weight,

Ballard nor the victim hesitated when making their identifications during the show-ups. *See Stanley v. Cox*, 486 F.2d 48, 51 (4th Cir. 1973) (finding a one-on-one pretrial show-up immediately after the crime not suggestive and stating that "on-the-scene identifications are likely to promote fairness, by enhancing reliability of the identifications, and permit expeditious release of innocent subjects"); *Mattox*, 166 F.3d at *2-3 (finding a pre-trial identification reliable where the witness to a car-jacking had an opportunity to observe the defendant under a street light in a parking lot, spoke with the defendant briefly before the crime, and made an identification at a show-up only two to three hours after the incident); *Foster v. California*, 394 U.S. 440, 441-42 (1969) (finding a pretrial identification unnecessarily suggestive where the witness could not identify the defendant in a primary line-up but then identified him in a second line-up where the defendant was the only person who appeared in both line-ups); *Biggers*, 409 U.S. at 194-95 (finding it highly suggestive where police were unable to conduct a suitable line-up and so instead walked the suspect past the victim and had the suspect recite "shut up or I'll kill you" for the victim to hear). Based on the totality of the circumstances regarding the show-up, this Court finds the show-up was not unnecessarily suggestive as to violate Searcy's due process rights and therefore the undersigned **RECOMMENDS DISMISSAL** of Claim A.

2. Claim B: Ineffective Assistance of Counsel

The United States Supreme Court summarized the high bar petitioners face in a federal habeas petition in the context of Sixth Amendment ineffective assistance of counsel claims.

---

height, or age. ECF No. 1 at 18. Further Searcy argued that Ms. Ballard and the victim described the co-defendant as wearing different dark-colored shirts and then identified Searcy during the show-up, who was in a white tank top. *Id.* at 19. The fact that the victim did not provide a detailed description of Searcy alone does not indicate it was an unreliable identification, because the Court is to consider whether, "on the whole, [the] description was not inaccurate." 166 F.3d at *3 (explaining that a victim's fair but not exact description of an assailant is still reliable when there are other factors that weigh heavily in terms of reliability of the identification). The victim in Searcy's case described his assailant as a black male wearing a dark tank top and grey pants with long chin hair. Hr'g Tr. at 16. He also described the co-defendant with the male. *Id.* Further, regarding the difference between Searcy's clothing, Ms. Ballard stated that Searcy took off the brown shirt he had been wearing during the incident and left on the white tank top he was wearing underneath. *Id.* at 95.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. 668, 687 (1984). Thus, to be entitled to habeas, Searcy has to show both

that his defense counsel provided deficient assistance and that he was prejudiced as a result. *Id.*

at 700.

In Claim B(1), Searcy argued that his trial counsel was ineffective because his cross-

examination elicited prejudicial testimony from Detective Freeman. ECF No. 1 at 22. Searcy

claimed that during cross-examination of Detective Freeman, counsel asked a question to which

Detective Freeman responded that she knew of Searcy as having been associated with a local

gang, the "GMBs."[3] *Id.* at 22-23. Respondent argued that even if the testimony elicited were

prejudicial, Searcy has failed to show prejudice because "[n]othing in the record demonstrates

the trial judge admitted the testimony as anything other than evidence as to how Detective

Freeman was familiar with [Searcy]," and that the evidence against Searcy was overwhelming.

ECF No. 14 at 15. The undersigned agrees with Respondent's position. There is no indication

that counsel's performance was deficient or that prejudice resulted based on one statement. The

transcript of the cross-examination reads as follows:

[Mr. Utecht/Defense counsel]:  When you heard the black eye and white female, a bell rang?

[Detective Freeman]:  Yes.

[Mr. Utecht]:  Did Mr. Searcy ring a bell with any of you?

[Detective Freeman]:  Not at that time.

---

[3] "GMBs" allegedly refers to the gang "Get Money Boys." ECF No. 14 at 15 n.5.

[Mr. Utecht]:  Had you ever heard of Mr. Searcy?

[Detective Freeman]:  Yes.

[Mr. Utecht]:  You had heard of him in that investigation in that neighborhood?

[Detective Freeman]:  We knew of Mr. Searcy as being part of the GMBs so we are familiar with a lot of the members.

[Mr. Utecht]:  I'm going to object to that.

[Ms. Purkey/Commonwealth's Attorney]:  Your Honor, he can't object to what he elicited - -

[The Court]:  -- response to your question.

Hr'g Tr. at 50.  Defense counsel immediately proceeded to delve into the fact that Detective Freeman had no idea who the suspect was that the victim originally described.  *Id.* at 51.  It cannot be said that counsel's performance was deficient for asking the question he did, even if there were a likelihood the witness would respond prejudicially.[4]  Counsel has a right to present the case in a manner with a strategy he deems fit.  *See Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995) (noting that there is a presumption that trial counsel employed a reasoned trial strategy).  Based on the preceding testimony regarding whether either of the suspect's descriptions "rang a bell" with Detective Freeman, it is reasonable that defense counsel was attempting to establish that Detective Freeman, who knew of Searcy, did not immediately think about Searcy specifically after hearing the victim's description; thus trying to establish that the victim's description was too general or vague and that it fit the description of many males or that it did not fit the description of anyone particularly,

Even if Searcy's argument that counsel's performance was deficient were true, there is no reasonable probability, let alone any probability, that but for the alleged "error" the outcome of

[4] Arguably, the question itself was not likely to elicit any response other than "yes" or "no," let alone a response that was unfairly prejudicial.  It appears Detective Freeman's answer was a volunteered statement that may have gone beyond what was asked.

the proceeding would have been different. *Strickland*, 466 U.S. at 691-96. Searcy points to no evidence other than the fact that "statements made about [his] character and credibility is [sic] presumed to be inherently prejudicial . . . and the stigma associated with being in a gang, could not be removed." ECF No. 17 at 13. The Commonwealth's Attorney did not address this statement on re-direct—it opened no doors for further prejudicial testimony. *See Rayfield v. Eagleton*, No. CIV.A. 8:13-3391-TMC, 2015 WL 535625, at *10 (D.S.C. Feb. 10, 2015) *appeal dismissed*, 608 F. App'x 135 (4th Cir. 2015) (finding that certain elicited testimony was particularly egregious and its prejudice was elevated because it opened the door for further testimony . . . that would have normally been barred had trial counsel not elicited this evidence for the first time on cross-examination). Further, as Respondent notes, the trial was a bench trial in which it is presumed that the judge, as trier of fact, only considers relevant material and competent evidence, *see Webster v. United States*, 330 F. Supp. 1080, 1087 (E.D. Va. 1971), and there is no indication to the contrary in this case. Lastly, the evidence against Searcy, which included two reliable eye witness identifications, was substantial enough that the alleged prejudicial testimony was not the deciding factor. *See Strickland*, 466 U.S. at 677 (finding that when there is overwhelming evidence against the defendant, no substantial prejudice could have resulted from counsel's failure to introduce certain expert witness testimony on rebuttal). Consequently, this Court finds that Searcy failed to meet his burden for this claim as well, and thus the undersigned **RECOMMENDS DISMISSAL** of Claim B(1).

In Claim B(2), Searcy argued that he was denied effective assistance of appellate counsel when appellate counsel "failed to pursue his claim that 'the trial court erred in admitting into evidence [Searcy's] pre-court identification which was impermissibly suggestive.'" ECF No. 1 at 24. Appellate counsel's failure, Searcy argued, deprived him of the ability to protect his

interests during the appeal process. *Id.* Respondent argued that "[a]ppellate counsel is not required to assert every conceivable claim on appeal." ECF No. 14 at 16 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Again, the undersigned agrees with Respondent's position. Not raising every claim that a defendant requests to be raised does not render an assumption that counsel's performance was deficient. Appellate counsel has discretion to select which grounds should serve as the basis for appeal, and appellate counsel's "choice of what issues to raise on appeal is virtually unassailable." *Sawyer v. Clarke*, No. 1:13CV749, 2014 WL 948893, at *3 (E.D. Va. March 7, 2014) (citing *Jones v. Barnes*, 463 U.S. 745 (1983) (stating discretionary role of appellate counsel on appeals in court-appointed cases). Further, Searcy's appellate counsel raised two assignments of error on appeal, which he presumably judged were more meritorious, and which the Court of Appeals of Virginia addressed and but ultimately denied. *See Searcy v. Commonwealth*, No. 1937-11-1 (Va. App. Ct. Mar. 6, 2012). Searcy cannot claim that his appellate counsel was ineffective for failing to raise *all* the issues he wanted because of the inherent judgment decisions reserved for counsel. *Jones*, 463 U.S. at 751 (dismissing petitioner's claim "that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points"); *cf. Frazer v. S. Carolina*, 430 F.3d 696, 705 (4th Cir. 2005) ("Although counsel need not press particular issues of the defendant's choosing, by implication counsel must consult with the defendant to identify whether there are any meritorious issues to appeal."); *see also Smith v. Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.")). Consequently, Searcy has not met the performance prong of *Strickland* on this

claim. Because the Court would find that appellate counsel rendered reasonably effective assistance under the first prong of *Strickland*, the Court need not address the prejudice prong. *Strickland*, 466 U.S. at 698. The undersigned therefore **RECOMMENDS DISMISSAL** of Claim B(2).

## III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 12, be **GRANTED**, and Searcy's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## IV. PENDING MOTIONS

Two motions filed by Searcy are currently pending before the Court: A Motion for an Evidentiary Hearing, ECF No. 17, and a Motion for Issuance of Subpoenas, ECF No. 10. Searcy has failed to allege additional facts in his habeas petition that, if true, would entitle him to relief; consequently he is not entitled to an evidentiary hearing. 28 U.S.C. § 2254(e)(2); *See Fullwood v. Lee*, 290 F.3d 663, 681 (4th Cir. 2002); *Jones v. Polk*, 401 F.3d 257, 269 (4th Cir. 2005). *See also Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Searcy's Motion for an Evidentiary Hearing, ECF No. 17, therefore is **DENIED**. Further, in light of the issues raised in the petition and the Court's proposed findings, no purpose remains warranting the issuance of subpoena duces tecum, nor is their issuance is authorized under 28 U.S.C. § 2254(e) and (f). Therefore, Searcy's Motion for Issuance of Subpoenas that he seeks pursuant to Federal Rule of Civil Procedure 34, ECF No. 10, is **DENIED**. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951) (explaining the purpose relating to issuance of a subpoena duces tecum relates to trial efficiency and preparation); *Sullivan v. Dickson*, 283 F.2d 725, 727 (9th Cir. 1960) explaining in the context of a habeas petition that this motion "is available only when the

documents in question are in the possession of a party, not in the control of a potential witness. . . . Thus there is no mechanism in federal civil procedure by which the relief requested, inspection, can be granted in the absence of a pending proceeding"); *Oliver v. Butler*, No. 5:12-CT-3060-FL, 2013 WL 1750760, at *1 (E.D.N.C. Apr. 23, 2013) (explaining that such motions for subpoenas are necessary only in the context of obtaining discovery).

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Faulcon is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the

Petitioner and counsel of record for the Respondent.

                                              /s/
                                    Lawrence R. Leonard
                                    United States Magistrate Judge
                                        LAWRENCE R. LEONARD
                                    UNITED STATES MAGISTRATE JUDGE


Norfolk, Virginia
December 10, 2015

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Aaron Christopher Searcy, #1442048
St Brides Correctional Center
701 Sanders Rd.
P.O. Box 16482
Chesapeake, VA 23328
PRO SE

Fernando Galindo
Clerk of the Court

By:

Deputy Clerk
December 10, 2015

25